

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

REDOUANE GOULMAMINE, M.D., and
MIDLOTHIAN REHABILITATION
ASSOCIATES, LLC d/b/a/
The Petersburg Spine Center,

     Plaintiff,

v.                       Civil Action No. 3:15cv370

CVS PHARMACY, INC.,

     Defendant.

### MEMORANDUM OPINION

This matter is before the Court on Defendant CVS Pharmacy, Inc.'s MOTION TO DISMISS. (Docket No. 10). For the reasons set forth below, the motion will be granted in part and denied in part.

### BACKGROUND

Plaintiff Redouane Goulmamine, M.D. is a licensed medical doctor and the sole member of Plaintiff "Midlothian Rehabilitation Associates, PLLC d/b/a The Peterburg Spine Center." (Compl. ¶ 8, Docket No. 1). The facts are set forth as alleged in the Complaint.

Beginning in late 2014 and continuing through early 2015, pharmacy employees at several central Virginia locations of CVS Pharmacy Inc. ("CVS") began telling Goulmamine's patients that CVS would no longer fill prescriptions written by Goulmamine. (Compl. ¶¶ 12-15, 23). Goulmamine and The Spine Center (hereinafter "Goulmamine") further allege that, during these nearly two-dozen conversations, CVS employees also made:

- Factual (and incorrect) statements relating to Goulmamine: that Goulmamine was in jail (Compl. ¶ 23(k)), that Goulmamine had overprescribed to a pregnant patient (Compl. ¶ 23(k)), that one of Goulmamine's patients had died from an overdose of Xanax (Compl. ¶ 23(m)), and that Goulmamine or someone in his office was producing fraudulent prescriptions. (Compl. ¶ 23(j), (p)).

- Factual (and incorrect) statements relating to Goulmamine's standing in relationship to regulatory bodies: statements that the DEA, FBI, or the Board of Medicine was investigating Goulmamine or had revoked his license. (Compl. ¶ 23(c), (g)-(i), (k), (l), (q)).

- Potentially misleading statements of fact: per Goulmamine's allegations, CVS employees made several statements that "he is being investigated" or "audited," or that he was "under review." (Compl. ¶ 23(e), (n), (o), (q)). These statements

2

leave the identity of the investigator ambiguous, but in context, it is reasonable that a patient might believe the investigator to be a regulatory or oversight body, rather than CVS.

- Statements of opinion regarding Goulmamine's prescription practices: "he is filling too many prescriptions" (Compl. ¶ 23(h)) and "he writes too much pain pills and it's against the law." (Compl. ¶ 23(j)).

- Statements of opinion regarding Goulmamine or Goulmamine's relationship with his patients: "he is bad news," (Compl. ¶ 23(c), (d)), variations on "you should find another doctor" or "your doctor won't be in business much longer," (Compl. ¶ 23(f), (q), (r)), and "he may lose his license." (Compl. ¶ 23(h), (q)).

- Factual (and truthful) statements about the relationship between Goulmamine and CVS: variations on "CVS will not fill Dr. Goulmamine's prescriptions." (Compl. ¶ 23(a)-(g), (i)-(s). The Complaint also alleges that an employee stated that CVS "had problems with [Goulmamine]." (Compl. ¶ 23(j)).

- Statements about third parties: criticisms of patients, such as "you shouldn't be taking these pain pills," "you

are probably a drug addict," and "you are just a drug addict." (Compl. ¶ 23(b), (i), (s)).

Goulmamine states that he is, and was during the relevant time frame, in good standing with all regulatory and oversight bodies, that he has never been investigated by such bodies, and that he has never had a patient die as a result of his prescriptions. (Compl. ¶¶ 25-26). Goulmamine states that, "[a]s a result of CVS's campaign of defamation, Dr. Goulmamine and The Spine Center have been substantially harmed. Dr. Goulmamine is losing patients almost daily and he is also losing referrals." (Compl. ¶ 27).

In March 2015, CVS sent Goulmamine a letter stating that it would no longer fill his prescriptions. (Compl. ¶¶ 18-21). Goulmamine alleges that

> CVS told Dr. Goulmamine words to the effect
> that (i) he "wrote too many pain pill"
> prescriptions; (ii) some of his patients
> were "red flags" — a euphemism for drug
> addicts — because they were "self pay"; and
> (iii) because it [CVS] takes to heart drug
> abuse and diversion," it will no longer fill
> his prescriptions.

(Compl. ¶ 19). Goulmamine claims that he was "so offended at the letter that he ripped it up and threw it away." (Compl. ¶ 21). CVS attached an exhibit which CVS alleges is the March 2015 letter at Exhibit 1. (Def.'s Br., Ex. 1, Docket No. 11).

4

Goulmamine's Complaint presents three claims for relief: defamation (Count I); insulting words (Count II); and tortious interference with contract/business expectancy (Count III).

### DISCUSSION

CVS argues that Goulmamine has failed to state a set of facts entitling him to relief in any of his claims. CVS is correct as to Counts II and III, and incorrect as to Count I.

### A. Legal Standard for a Motion to Dismiss

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) challenges the legal sufficiency of a complaint. Jordan v. Alternative Resources Corp., 458 F.3d 332, 338 (4th Cir. 2006). Federal Rule of Civil Procedure 8(a)(2) "requires only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the ... claim is and the grounds upon which it rests." McCleary-Evans v. Maryland Dep't of Transp., State Highway Admin., 780 F.3d 582, 585 (4th Cir. 2015) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

When deciding a motion to dismiss, a court "draw[s] all reasonable inferences in favor of the plaintiff." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 253 (4th Cir. 2009). However, while the court must "will accept the pleader's description of what happened" and "any conclusions

5

that can be reasonably drawn therefrom," the court "need not accept conclusory allegations encompassing the legal effects of the pleaded facts," **Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure** § 1357 (3d ed. 1998); Chamblee v. Old Dominion Sec. Co., L.L.C., No. 3:13CV820, 2014 WL 1415095, *4 (E.D. Va. 2014). Nor is the court required to accept as true a legal conclusion unsupported by factual allegations. Ashcroft v. Iqbal, 556 U.S. 662, 678-79, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). "Twombly and Iqbal also made clear that the analytical approach for evaluating Rule 12(b)(6) motions to dismiss requires courts to reject conclusory allegations that amount to mere formulaic recitation of the elements of a claim and to conduct a context-specific analysis to determine whether the well-pleaded factual allegations plausibly suggest an entitlement to relief." **Wright & Miller**, supra; Chamblee, supra. In sum, a 12(b)(6) motion should be granted if, "after accepting all well-pleaded allegations … as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." Edwards v. City of Goldsboro, 178 F. 3d 231, 244 (4th Cir. 1999).

6

## B. Count I: Defamation

The parties concur with the elements of, and relevant defenses to, defamation:

> (1) publication; (2) of a statement that is actionable; and (3) requisite intent. Jordan v. Kollman, 612 S.E. 2d 203, 206 (Va. 2005). Defamation claims may be defeated by a claim of privilege, which, in turn, may be overcome if the plaintiff proves malice. Great Coastal Exp., Inc. v. Ellington, 334 S.E. 2d 846, 853 (Va. 1985).

Andrews v. Virginia Union Univ., No. 3:07CV447, 2008 WL 2096964, at *10 (E.D. Va. May 16, 2008); see also Chapin v. Knight Ridder, Inc. 993 F. 2d. 1087, 1092 (4th Cir. 1993); Cashion v. Smith, 286 Va. 327, 337-339, 749 S.E. 2d 526, 531 (2013). To be actionable, a statement must be false and defamatory. Chapin, 993 F. 2d. at 1092. Whether a statement is actionable is a matter of law. Id. The existence of qualified privilege is also a question of law; however, the question of whether a defendant has lost or abused a privilege is a question of fact. Cashion, 286 Va. at 337.

CVS alleges that Goulmamine has pled non-actionable statements, and that the remaining statements are protected by qualified privilege. (Def.'s Mem. in Support of Mtn. to Dismiss for Failure to State a Claim 6, 9-12) ("Def.'s Br." Docket No. 11). Goulmamine replies that he has pled sufficient facts to demonstrate malice and invalidate any privilege defense, and that CVS may not raise the affirmative defense of privilege at

the 12(b)(6) stage. (Pl.'s Mem. in Opposition to Mtn. to Dismiss 6-7, 9-10) ("Pl.'s Reply," Docket No. 17).

### 1.   Actionable Statements
#### (i)   Goulmamine Has Pled Several Clearly Actionable Statements

"To be actionable, the statement must be both false and defamatory." Jordan, 269 Va. at 575. At the 12(b)(6) stage in a defamation case, a court must accept as false any statements which the Complaint alleges to be false. Chapin, 993 F. 2d at 1092. Because the Court presumes falsity at this stage, the key actionability question in deciding a motion to dismiss is whether the statements referenced in the Complaint are defamatory.

Virginia law recognizes certain statements as defamatory per se, including statements which impute to the plaintiff the commission of a criminal offense, impugn his fitness for his trade, or prejudice plaintiff in pursuit of his trade. Hatfill v. New York Times Co., 416 F.3d 320, 330 (4th Cir. 2005). Whether a statement is capable of having defamatory meaning is a question of law. Id.

"In determining whether or not the language does impute a criminal offense, the words must be construed in the plain and popular sense"; an express allegation of criminal activity is

8

not necessary. Id. at 331. Both murder and "a charge of aiding and abetting in the possession of narcotics" are crimes of moral turpitude which qualify as defamatory per se. Id. CVS's statements regarding Goulmamine causing overdoses, construed in their plain and popular sense, thus impugn to Goulmamine a crime of moral turpitude.

With regard to impugning fitness for one's trade, an "implication … that the plaintiff is guilty of unethical and unprofessional conduct … for which conduct the defendant suggests … that the plaintiff could and should be subjected to disbarment proceedings" is defamatory per se, because it "impute[s] conduct tending to injure him in his profession." Carwile v. Richmond Newspapers, 196 Va. 1, 8, 82 S.E. 2d 588, 592 (1954). Stating that a physician has committed misconduct worthy of losing his license to practice medicine or dispense controlled substances is sufficiently similar to suggesting an attorney has committed conduct worthy of disbarment, such that several CVS statements qualify as defamation per se.

Goulmamine has thus pled statements that are defamatory per se, and that he claims are untrue. (Compl. ¶ 25). Drawing the proper inferences in favor of the plaintiff, Goulmamine has stated several actionable statements. If these statements are not protected by qualified privilege, then Goulmamine has pled

9

actionable statements sufficient to state a claim for relief, and thus to move past the 12(b)(6) stage.

### (ii) Actionability of Statements of Truth or Opinion

CVS attacks a sub-set of the statements in the Complaint as non-actionable, either because they are truthful or because they are opinions. (Def.'s Br. 9-12).

First, CVS properly asserts that statements of opinion do not constitute defamation, and that whether a statement is an expression of opinion is a question of law. Cashion, 286 Va. at 336; see also Jordan, 269 Va. at 575-576 ("To be actionable, the statement must be both false and defamatory .... [S]tatements of opinion are generally not actionable because such statements cannot be objectively characterized as true or false."). However, CVS misses two caveats to the "opinions cannot be defamatory" rule.

First, "statements [of opinion] may be actionable if they have a provably false connotation and are thus capable of being proven true or false." E.g., Katti v. Moore, No. 3:06CV471, 2006 WL 3424253, at *4 (E.D. Va. Nov. 22, 2006) (internal citations omitted). In Cashion, the insinuation that a patient "could have made it with better resuscitation [by plaintiff anesthesiologist]" was actionable because "[w]hether the quality

10

of [plaintiff anesthesiologist's] treatment caused or even contributed to the patient's death is an allegation of fact capable of being proven true or false, such as through expert opinion testimony." Cashion, 286 Va. at 337; see also, e.g., Carwile, 196 Va. at 8. "Opinions" about whether a professional has met a professional standard of care may be defamatory when such "opinions" could be proven true or false at trial.

Second, a statement of opinion may be actionable when it "reasonably can be construed as a statement of fact" because "it is 'laden with factual content' and the underlying facts are allegedly false." Andrews, 2007 WL 4143080 at *8 (quoting Richmond Newspapers, Inc. v. Lipscomb, 234 Va. 277, 362 S.E. 2d 32, 43 n. 8 (1987)). Bearing these two caveats to the "opinion is not defamation" rule in mind, it is clear that many of the statements CVS claims are "opinions," (Def.'s Br. 10), are actionable either because they may be proven false by an expert witness or because they are laden with factual content and the underlying facts are alleged to be false.

CVS also properly asserts that truth is a complete defense to a defamation claim. Alexandria Gazette Corp. v. West, 198 Va. 154, 160, 93 S.E. 2d 274, 279 (1956). CVS accordingly argues that any statement that CVS would not fill Goulmamine's prescriptions is non-actionable, because it is factually correct

11

that CVS had chosen to stop filling Goulmamine's prescriptions. (Def.'s Br. 11-12). CVS also claims that any statement that Goulmamine was "under review" or "under investigation" is non-actionable, because it is factually correct that CVS did conduct an investigation into Goulmamine's prescribing patterns. (Def.'s Br. 11-12).

However, Goulmamine is correct that, drawing all reasonable inferences in his favor, it _is_ plausible that a patient who heard "CVS is not filling Goulmamine's prescriptions anymore. Goulmamine is being investigated" would believe the investigation was being performed by an entity other than CVS. As such, it is plausible that a listener would infer a false fact (investigation by a regulatory agency) rather than a true fact (investigation by CVS). This conclusion is bolstered by the Fourth Circuit "general rule of interpretation … that 'allegedly defamatory words are to be taken in their plain and natural meaning … courts applying Virginia defamation law should consider not only the words themselves but also the inferences fairly attributable to them." Hatfill, 416 F. 3d at 331 (internal quotations omitted).

Goulmamine falters, however, in arguing that the truthful statement "CVS is investigating Goulmamine," in isolation, can be actionable. First, Goulmamine argues that truthful statements

12

can be actionable when such statements are defamatory _per se_. (Pl.'s Reply 17). However, Goulmamine draws this conclusion from a misreading of Baylor v. Comprehensive Pain Mgmt. Ctrs., 2011 U.S. Dist. LEXIS 37699 (W.D. Va. Apr. 6, 2011). To the contrary, Virginia law clearly states that an actionable statement must be defamatory and untrue, even if that statement is defamatory _per se_. Baylor v. Comprehensive Pain Mgmt. Ctrs., 7:09-CV-00472, 2011 WL 1327396, at *9; see also, e.g., Carwile, 198 Va. at 8.

Goulmamine also argues that CVS should not be able to rely on the fact, if true, that CVS was conducting investigation, because facts not included in a complaint may not be considered on a motion to dismiss. (Pl.'s Reply 16). Goulmamine is correct that "materials outside the complaint may not be considered" in deciding a motion under Rule 12(b)(6) stage. E.g., Bosiger v. U.S. Airways, 510 F.3d 442, 450 (4th Cir. 2007). CVS does not dispute this point of law. Instead, CVS argues that reference to its investigation was included in Goulmamine's Complaint, because the Complaint referred to the March 15 letter from CVS, and the text of that March 15 letter (as provided by CVS as Exhibit 1) states the existence of an investigation. (Def.'s Reply 9-10, Docket No. 18). Goulmamine objects to introduction of Exhibit 1 because it "may indeed be the letter that is referenced in the Complaint, but it also may not." Goulmamine

13

therefore argues that, because all reasonable factual inferences must be drawn in a plaintiff's favor in deciding a Rule 12(b)(6) motion, that any uncertainty over the letter's identity must be resolved against CVS.  However, for the purposes of evaluating whether the statement "CVS is investigating Goulmamine" adds facts to the Complaint, the Court finds that it is not unreasonable to accept that Exhibit 1 is the March 2015 letter referred to in the Complaint. Exhibit 1 may be incorporated into the Complaint by reference, and communications which consisted entirely of the "CVS is investigating Goulmamine" are factual, not misleading, and not actionable.

To summarize the results of the parties' skirmishes: truthful statements are not actionable, truthful but misleading statements are actionable, true and non-misleading statements are not actionable, and CVS may introduce Exhibit 1 to show that it was conducting an investigation into Goulmamine.

### (iii) Conclusion on Actionable Statements

Goulmamine correctly states that, "[i]n determining whether a statement is one of fact or opinion, a court may not isolate one portion of the statement at issue from another portion of the statement .... Rather, a court must consider the statement as a whole." (Pl.'s Br. 15) (citing Hyland v. Raytheon Tech.

14

Servs. Co., 277 Va. 40, 48, 670 S.E. 2d 746, 751 (2009)). See also Snyder v. Phelps, 580 F. 3d 206, 219 (4th Cir. 2009).

The conversations quoted in the Complaint at ¶ 23(a) and ¶ 23(b) are not actionable, because they consist solely of statements that CVS would no longer fill Goulmamine's prescriptions.

Drawing all reasonable inferences in Goulmamine's favor, all the other conversations quoted (at ¶¶ 12-15 and ¶¶ 23(c)-(s)) contain at least one statement that is actionable because it is untrue and defamatory, because it is true but misleading, or because it is an opinion that is actionable on the grounds that it is verifiably false or is based on untrue facts. By reciting nearly two-dozen defamatory conversations, Goulmamine has pled sufficient actionable statements to state a claim for defamation.

## 2.  Pharmacist-Patient Qualified Privilege

CVS asserts, and Goulmamine does not contest, that conversations between a pharmacist and patient are shielded by a qualified privilege. (Def.'s Br. 6). However, no Virginia court has ever applied qualified privilege to pharmacist-patient communications, and the parties' current pleadings have not presented an adequate basis for extending Virginia privilege law to pharmacist-patient communications.

When confronted with uncertain state law, a federal court sitting in diversity jurisdiction must predict what course the highest court in the state would take. Byelick v. Vivadelli, 79 F. Supp. 2d 610, 623 (E.D. Va. 1999). The federal court may base its prediction on "canons of construction, restatements of the law, treatises, recent pronouncements of general rules or policies by the state's highest court, well considered dicta, and the state's trial court decisions." Wells v. Liddy, 186 F.3d 505, 528 (4th Cir. 1999). Finally, cases from other jurisdictions can also provide guidance. See Warren Bros. Co. v. Cardi Corp., 471 F.2d 1304, 1307-08 (1st Cir. 1973).

CVS properly states that Virginia Supreme Court's general rule on qualified privilege set by the Supreme Court of Virginia is that: "[c]ommmunications between persons on a subject in which the persons have an interest or duty" enjoy qualified privilege. (Def.'s Br. 6) (relying on Larimore v. Blaylock, 259 Va. 568, 572, 528 S.E. 2d 119, 121 (2000)). However, no Virginia court has ever applied this general rule to communications between a pharmacist and a patient. Instead, the overwhelming majority of qualified privilege cases founded on the foregoing general principles deal with intra-organizational immunity. E.g., Mann v. Heckler & Koch Def., Inc., 639 F. Supp. 2d 619, 636 (E.D. Va. 2009); Kuley v. Fayez, 89 Va. Cir. 238

16

(2014) ("The genesis of the qualified privilege doctrine in Virginia came largely from a series of cases [about communications made to a business associate in the ordinary course of business]. These cases established the privilege as a common-law doctrine in the Commonwealth"). While pharmacists and patients may have some form of common interest in the patient's health, that interest is clearly not identical to the intra-corporate common interest that forms the predicate for Virginia qualified privilege jurisprudence.

CVS argues that qualified privilege should apply to the pharmacist-patient relationship because "pharmacists are licensed 'health professionals' who render 'professional services' and owe a duty of reasonable care to their patients." (Def.'s Br. 6). CVS implies that the duty to provide health care substitutes for traditional intra-corporate duties which gave rise to qualified privilege in cases such as Mann. CVS relies primarily on three sources of law to establish this duty: **Va. Code** § 8.01-581.1 (stating that physicians, like doctors and nurses, are "health professionals" who provide "professional services"), Lemons v. Abbott Labs., Inc., 50 Va. Cir. 339 (1999) (stating that pharmacists owe duties of care to patients, though not deciding what those duties entail), and Cashion, 286 Va. at 337-38 (finding that qualified privilege applied to

17

communications between medical professionals discussing patient's cause of death). However, when read in context, none of these sources actually supports a pharmacist-patient qualified privilege. Cashion is merely a variation on the well-established intra-organizational theme; it does not stand for the principle that discussions of medical care between providers and patients are always "[c]ommmunications between persons on a subject in which the persons have an interest or duty." Cashion, 286 Va. at 337. Lemons recognized that pharmacists owe a duty of reasonable care to patient-customers, but did not decide what that duty entails. Lemons, 50 Va. Cir. at 341 (leaving the scope of a pharmacist's duty to a medical malpractice board's determination). As such, Lemons does not actually stand for the proposition that pharmacists have an "interest or duty" in counseling patients. Indeed, the Virginia case law only explicitly states one duty of care for pharmacists: the duty to correctly fill a prescription. E.g., Nichols v. Kaiser Found. Health Plan of Mid-Atl. States, Inc., 257 Va. 491, 514 S.E. 2d 608 (1999); Franklin v. K-Mart Corp., 997 F. Supp. 2d 453, 461 (W.D. Va. 2014).

Finally, CVS offers two Florida and Arizona federal court cases in which the courts found that pharmacists enjoyed a qualified privilege. (Def.'s Br. 6-7). The first, DeBinder v.

18

_Albertson's, Inc._, No. 06-1804, 2008 U.S. Dist. LEXIS 24289 (D. Ariz. Mar. 26, 2008), is inapplicable to the legal question at hand. _DeBinder_ turned on a call between a pharmacist and a nurse, wherein the nurse told the pharmacist that the plaintiff was "calling in prescriptions all over town" using the name of the nurse's supervising doctor. _DeBinder v. Albertson's, Inc._, No. CV 06-1904-PCT-PGR, 2008 WL 828775, at *3. First, this is not a pharmacist-patient communication. Second, the court subsequently found that the communications were privileged because they were made to prevent commission of a crime (fraud) and because the nurse was acting to protect her employer's reputation, _id._ at *5-7, not because there was a penumbra of qualified privilege for statements related to medical treatment.

_Lefrock v. Walgreens_, 77 F. Supp. 3d 1999 (M.D. Fla. 2015) is factually similar to the instant case. The district court found that pharmacists' "false statements pertaining to [a doctor's] medical reputation and ethics" were protected by qualified privilege, because the pharmacists were "filling prescriptions and giving general advice as they have a duty to do." _Id._ at 1200. However, this duty to "give general advice" originated in state cases holding, in essence, that pharmacists may be liable for not checking the reasonableness of prescriptions. _Arrington v. Walgreen Co._, 644 F. Supp. 2d 1230,

19

1232-33. The <u>Lefrock</u> pharmacists made statements in the course of fulfilling a state law duty; that duty satisfied the "duty" requirement of qualified privilege. <u>Lefrock</u>, 77 F. Supp. 3d at 1200. There is no Virginia case law that creates a duty analogous to the "duty to give general advice" noted in <u>Lefrock</u>.

However, an analogous duty or interest could <u>plausibly</u> be read into the Virginia Code. The pharmacist licensing statute requires pharmacists to screen new prescriptions for, among other things, clinical abuse or misuse. **Va. Code** § 54.1-3319(A). However, the pharmacist's duty to conduct such a review is distinct from his duty to <u>communicate with patients</u>, because the statute addresses patient counseling in subsequent sections. Those subsections state that a pharmacist "shall offer to counsel any person who presents a new prescription" (and "may offer" to counsel any person who presents a refill of a prescription). **Va. Code** § 54.1-3319(B). If the offer to counsel is accepted, the pharmacist "shall counsel the person presenting the prescription to the extent the pharmacist deems appropriate in his professional judgment." **Va. Code** § 54.1-3319(C). The statute lists several topics the counseling "may, but need not, include" - and neither abuse nor misuse is part of that statutory list. <u>Id.</u> While a pharmacist has an explicit statutory duty under § 54.1-3319(A) to satisfy <u>himself</u> that no abuse or

misuse is occurring, the pharmacist's statutory duty to counsel under §54.1-3319(B)-(C) does not explicitly state any duty to discuss abuse or misuse. However, §54.1-3319(C)'s suggested list of counseling topics is not exhaustive. Arguably, a pharmacist's professional judgment might, in some cases, cover counseling patients about abuse, misuse, and a doctor's prescribing habits. While this extension is plausible, it is not conclusively supported either by existing case law or by CVS's briefing.

In sum, Virginia has not recognized any qualified privilege for pharmacist-patient communications in the past. The pharmacist's "duty to counsel" under **Va. Code** § 54.1-3319(B)-(C) might create a duty to discuss the professional competence of the prescribing physician with a patient, such that pharmacist-patient counseling would be entitled to an extension of the existing common law qualified privilege. Given that there is no settled state law on the issue of pharmacist-patient qualified privilege, however, the Court is not satisfied that CVS's current briefing (Def.'s Br. 6-7) sufficiently establishes that CVS's alleged statements are sheltered by a qualified privilege. CVS may raise the issue again in a motion for summary judgment if supported by more authority than has been presented at this stage.

21

### 3.   Consideration of Affirmative Defenses in Deciding a Rule 12(b)(6) Motion

Goulmamine correctly cites Jones v. Bock and Goodman v. Praxair for the proposition that, generally, a petitioner need not plead facts to negate an affirmative defense, and that generally affirmative defenses are not a ground to grant a motion to dismiss. (Pl.'s Reply 6) (relying on Jones v. Bock, 549 U.S. 199 (2007); Goodman v. Praxair, Inc., 494 F. 3d 458, 466 (4th Cir. 2007)). Goulmamine misses Goodman's exception to the rule: a court may reach the merits of an affirmative defense at the motion to dismiss stage when "all facts necessary to the affirmative defense clearly appear on the face of the complaint." Goodman, 494 F. 3d at 466.

That exception, however, does not apply in this case. As discussed below, Goulmamine has raised facts that would allow a jury to find that CVS acted with malice, potentially negating the qualified immunity defense. As such, even if qualified privilege protects CVS's statements, the facts necessary to support the affirmative defense do not clearly appear on the face of the Complaint. Hence, that aspect of CVS's motion fails.

### 4.   Malice and Loss of Qualified Privilege

The parties do not dispute the established precept that a speaker loses qualified privilege when the plaintiff proves actual or common law malice. (Pl.'s Reply 8). A "non-exhaustive" list of ways to prove common law malice include a showing that:

(1)   the statements were made with knowledge that they were false or with reckless disregard for their truth ...

(3)   the statements were motivated by personal spite or ill will ...

(4)   the statements included "strong or violent language disproportionate to the occasion ... or

(5)   the statements were not made in good faith.

Cashion, 286 Va. at 339. Any one of these ways to show malice, if proved, defeats the privilege. Id. Goulmamine concentrates on the first and fourth methods.

Goulmamine first argues that CVS employees made statements that were malicious because they exhibited reckless disregard for the truth. (Pl.'s Reply 9). Goulmamine asserts that failure to verify, when verification would have been a "simple matter," rises to the level of "wanton and reckless disregard for the rights of another." (Pl.'s Reply 9-10) (relying on A.B.C. Needlecraft Co. v. Dun & Bradstreet, Inc., 245 F. 2d 775, 777 (2d. Cir. 1957)). Goulmamine argues that, if CVS had called Goulmamine directly or adequately investigated Goulmamine, then CVS would know that the statements about DEA/FBI/Board of Medicine investigations were false. (Pl.'s Reply 9-10).

23

CVS raises factual and legal defenses to the recklessness allegation. As a factual matter, CVS argues that Exhibit 1 stated that CVS attempted to contact Goulmamine twice, such the Complaint shows evidence of CVS's due diligence. (Def.'s Reply 5 n.3). As a legal matter, CVS first rejects the notion that A.B.C. Needlecraft imposes a duty of due diligence, stating that under Fourth Circuit precedent "common law malice is not satisfied by a showing of mere negligence." (Def.'s Br. 5) (relying on Poindexter v. Mercedes-Benz Credit Corp., 792 F.3d 406, 412 (4th Cir. 2015)). CVS asserts that the Complaint states facts sufficient for negligence, at most. (Def.'s Br. 5). That view, however, off the mark. First, as a factual matter, CVS's internal investigation of Goulmamine is not an investigation into Goulmamine's relationship with regulatory bodies. Second, making any statement about a doctor causing death-by-overdose without knowing whether it was true is so damning to a medical professional that it constitutes reckless disregard for the truth. See Cashion 286 Va. at 337; Carwile, 196 Va. at 8; Hatfill, 416 F. 3d at 331.

Goulmamine also asserts that the statements at issue included strong or violent language disproportionate to the occasion. (Pl.'s Reply 10). For this proposition, Goulmamine relies largely on Crawford & Co. v. Graves, 199 Va. 495, 100

S.E. 2d 714 (1957), wherein the court held that malice will be found and qualified privilege lost where "the communication complained of goes beyond what the occasion demands and is unnecessarily defamatory." Crawford & Co., 199 Va. at 498.[1] Crawford & Co. stands for the proposition that ill-will is not an absolute requirement when the communication goes "beyond the scope" or is "disproportionate to" the interest or duty which gives rise to qualified privilege. Id. at 499; see also Cashion, 286 Va. at 339. Instead, disproportionately disparaging remarks may constitute malice, in place of an ill-will finding.

CVS responds by arguing that ill-will is always required to prove malice. However, CVS's own citation to Great Coastal Express, Inc. states that "[c]ommon-law malice is defined as some sinister or corrupt motive such as … ill will …; or what, as a matter of law, is equivalent to malice." (Def.'s Reply 4) (quoting Great Coastal, 230 Va. at 150 n.3). Again, Goulmamine

---

[1] In Crawford & Co., an insurance adjuster told the victim of a workplace accident that the victim-employee should see an orthopedist rather than a chiropodist. This, the court found, was within the scope of what the occasion demanded. However, the insurance adjuster continued on, implying that the chiropodist was only competent to cure trivial ailments ("Dr. Graves is not the type of doctor for this kind of work. He is a doctor for ingrowing toenails, flat feet and falling arches."). Because the insurance adjuster went "further than his interest or his duties require[d]" and was "unnecessarily defamatory," the statement fell outside the scope of the qualified privilege. Id. at 498-99.

makes the better argument: Virginia case law under <u>Crawford &amp; Co.</u> and <u>Cashion</u> shows that malice may be proved <u>either</u> by ill-will <u>or</u> by the "malice equivalent" of going beyond the scope of the duty or occasion.

Applying the first and fourth means of defeating qualified privilege from <u>Cashion</u> (reckless disregard or "strong or violent language disproportionate to the occasion") and bearing in mind that ill-will is not required in all malice cases, there is a triable issue of fact about whether CVS lost its qualified privilege.[2]

---

[2] Moreover, Goulmamine need not even prove malice if qualified privilege does not apply. In the absence of qualified privilege, compensatory damages in an action between two private plaintiffs are available when the plaintiff proves

> by a preponderance of the evidence that the publication was false, and that the defendant either knew it to be false, or believing it to be true, lacked reasonable grounds for such belief, or acted negligently in failing to ascertain the facts on which the publication was based ... The application of this negligence standard is expressly limited, however, to circumstances where the defamatory statement makes substantial danger to reputation apparent.

<u>Gazette, Inc. v. Harris</u>, 229 Va. 1, 13, 325 S.E. 2d 713, 725 (1985). The substantial danger of accusing a doctor of killing patients should have been apparent to a pharmacist, since accusing a person of a crime of moral turpitude or accusing a professional of malpractice constitute defamation <u>per se</u>. <u>See</u> <u>Hatfill</u>, <u>supra</u>. CVS acknowledges that "at most, Plaintiffs have alleged that CVS Pharmacy acted negligently." (Def.'s Br. 5). The statements clearly posed a substantial danger and CVS has conceded that the Complaint might state negligence, therefore, Goulmamine has pled sufficient facts to take this case before a jury if a qualified privilege does not exist.

### 5.  Conclusion

Defamation requires publication, an actionable statement, and requisite intent. Defamation may be defeated by qualified privilege, and qualified privilege may be defeated by a showing of malice. Andrews, 2008 WL 2096964, at *10.

Neither party contests publication, and Goulmamine has pled several untrue and defamatory statements, such that CVS's attempts to eliminate some statements as true or as mere opinion are irrelevant. The Court finds that CVS has not, at this time, made a legal argument which adequately shows that Virginia's law on qualified privilege covers communications between a pharmacist and patient. If pharmacist-patient qualified privilege does exist, Goulmamine has nevertheless stated sufficient facts that a reasonable jury could find that CVS demonstrated reckless indifference to the truth or that CVS communicated outside the scope of its duty, thereby establishing malice and defeating qualified privilege.

Because Goulmamine has pled all the elements of defamation, and because CVS has not conclusively demonstrated that qualified immunity should protect the communications at issue, the Motion to Dismiss Count I will be denied. CVS may raise the issue of

27

qualified privilege again on a motion for summary judgment, following more extensive briefing.[3]

## C. Count II: Insulting Words

Virginia's insulting words statute states, in its entirety, that "[a]ll words shall be actionable which from their usual construction and common acceptance are construed as insults and tend to violence and breach of the peace." **Va. Code** § 8.01-45.

The parties disagree over three main legal issues: whether CVS uttered insults which tend to violence and breach of the peace, whether Goulmamine was required to state verbatim the insulting words giving rise to an insulting words claim, and whether CVS may introduce Exhibit 1 as the March 2015 letter referenced in the Complaint.

### 1. Insults Tending to Violence and To Breach of the Peace

---

[3] Moreover, the Court declines to act on CVS's suggestion that it should convert CVS's motion to a motion under Rule 12(c). (Def.'s Reply 5 n.4). As CVS notes, "[i]t is appropriate to grant a motion under Rule 12(c) 'where no genuine issues of material fact remain and the case can be decided as a matter of law.'" (Def.'s Reply 6 n.4) (relying on Wells Fargo Equip. Fin., Inc. v. State Farm Fire & Cas. Co., 805 F. Supp. 2d 213, 216 (E.D. Va. 2011)). Even incorporating the Answer and Exhibit 1, there are still unresolved and material factual issues, clearly reserved for the jury, about whether CVS acted with reckless disregard for the truth or out of proportion to its interest or duty. It would be inappropriate to grant a 12(c) motion, and thus pointless to convert this 12(b)(6) motion into a 12(c) motion.

The parties disagree over two propositions of law: whether insulting words must be uttered face to face, and whether the terms of CVS's communications are insulting.

### (i)  Form of the Insulting Words

CVS states that a letter cannot form the basis of a fighting words claim, (Def.'s Br. 12-13), relying primarily on Thompson v. Town of Front Royal, No. CIV. A. 5:98CV00083, 2000 WL 329237, at *4 (W.D. Va. Mar. 16, 2000). Thompson and the Virginia Circuit Court opinion on which Thompson relies state that § 8.01-45 "only penalize[s] words used in a verbal attack directed at a particular individual in a face to face confrontation that presents a clear and present danger of a violent physical reaction." Thompson, 2000 WL 329237, at *4 (quoting Hutchins v. Cecil, 1998 WL 972093, at *4 (Va. Cir. Ct. Feb. 2, 1998)) (emphasis added). However, neither case involved a confrontation that was not face-to-face; both turned instead on whether generic derogatory words could present a "clear and present danger of a violent physical reaction." Thompson, 2000 WL 329237, at *4; Hutchins, 1998 WL 972093, at *1. The "face to face" language on which CVS relies is present in the case law, but has never actually controlled the outcome of a case.[4]

---

[4] CVS also notes that its construction is consistent with the insulting words statutes' history as an anti-dueling statute

The cases Goulmamine musters for the proposition that written communications satisfy the statute, (Pl.'s Reply 12), are more compelling. In Trail v. General Dynamics Armament and Technical Products, Inc., 697 F. Supp. 2d 654 (W.D. Va. 2010), defendant sent plaintiff a letter accusing her of violating a Virginia statute. Trail, 697 F. Supp. 2d at 658. The Trail court expressly rejected the idea that the insulting words statute involves a "face to face" requirement." Id. at 658-69. Instead, Trail stated that the "Virginia Supreme Court has repeatedly held that false accusation of criminal conduct, even when stated in writing, may constitute insulting words under the statute." Id. at 658 (relying on Darnell v. Davis, 190 Va. 701, 707, 58 S.E. 2d 68, 70 (1950) ("reasonable men would be justified in concluding that the words [in the affidavit] carried an imputation of crime .... This, we consider sufficient to sustain a finding that the words were insulting and tended to violence

---

(Def.'s Br. 13) (relying on W.T. Grant Co. v. Owens, 149 Va. 906, 141 S.E. 860 (1928)), but this is incorrect. W.T. Grant Co. states explicitly that no weight should be given to the fact that the statute was once an anti-dueling statute. W.T. Grant Co., 149 Va. at 913-16 (noting that, since the statute was amended to excise the anti-dueling portion of the statute in 1849, "no weight or importance has been attached to the purpose for which it was originally enacted").

and breach of the peace.")).[5] CVS, in its reply, cites three decisions that do not speak directly to whether insulting words may be written[6] and one case which actually supports the notion that insulting words may be written. (Def.'s Reply 12). The plaintiff in Williams v. Garraghty, 249 Va. 224, 455 S.E. 2d 209 (1995) based an insulting words statute on a written memorandum; the trial court allowed the insulting words claim to go to trial, and the plaintiff raised no error on that basis on appeal.

CVS's proposed face-to-face requirement appears only in dicta. On the other hand, at least one decision of the Supreme Court of Virginia (Darnell) explicitly acknowledged that written statements may be actionable as insulting words, though that court did not decide the case on that basis. Another Supreme

---

[5] Darnell was not decided on the basis of whether written words are actionable in an insulting words case: the court acknowledged that the words were insulting and tended to violence, but ultimately found for the defendant because the affidavit was privileged as part of a judicial proceeding. Id. at 709.

[6] Allen & Rocks, Inc. v. Dowell, 252 Va. 439, 442, 477 S.E. 2d 741, 743 (1996) turned on the likelihood of violence, and, although the words were spoken over the telephone, the court did not discuss whether the medium of communication had any impact on whether the communication rose to the level of insulting words. Chaffin v. Lynch, 83 Va. 106 (1887) states that the statute pertains to written and spoken words, though it goes on to find that the words used in the instant case did not rise to the level of inciting violence. Wright v. Cofield, 146 Va. 637, 640, 131 S.E. 787, 788 (Va. 1926) dealt with damages.

Court of Virginia decision (<u>Williams</u>) did not assign error to allowing a written communication to form the basis of an insulting words claim. Finally, one Western District of Virginia decision (<u>Trail</u>) explicitly and necessarily held that writing suffices for an insulting words claim. The weight of authority is on Goulmamine's side: the Court finds that written communications may serve as the basis of an insulting words claim, at least where the words are otherwise insulting and tend to violence.

### (ii) Language Which has a Tendency to Incite Violence

CVS states, and Goulmamine does not dispute, that there is a two-part test for whether a plaintiff has stated a claim under the insulting words statute: a plaintiff must plead words that (1) would be construed as insults and (2) tend to violence and breach of the peace.[7] (Def.'s Br. 14) (relying Mak Shun Ming Hotung, 85 Va. Cir. 241 (2012); Givens v. Dominion Mortgage Funding Corp., 1988 WL 619329, at *2 (Va. Cir. Ct. Sept. 1. 1988)).

Whether words are insulting and tend to incite violence is determined by the usual construction of the words and their common acceptance in the community. Cook v. Patterson Drug Co., 185 Va. 516, 39 S.E. 2d 304 (1946); Sanderson v. Colonial Williamsburg Found., 19 Va. Cir. 381 (1990); Va. Model Jury Instruction No. 37,030 (1988 Repl. Ed.). Whether the words are "insulting" is a question of fact, but a court may find as a matter of law that no reasonable jury could find the words insulting.[8]

---

[7] The "tend to violence and breach of the peace" language from the statute is sometimes elaborated as "presents a clear and present danger of a violent physical reaction." E.g., Thompson, 2000 WL 329237, at *4.

[8] "Whether or not the words used are insulting is a jury question, depending on whether from 'their usual construction and common acceptance' they may be 'construed as insults and

Statements that are defamatory per se are insulting per se; thus, defamatory per se statements necessarily meet the "insulting" requirement of the two-part insulting words test. "[A]n action for insulting words … is treated precisely as an action for slander or libel, for words actionable per se, with one exception, namely, no publication is necessary. O'Neil v. Edmonds, 157 F. Supp. 649, 651 (E.D. Va. 1958) (relying on Carwile , 196 Va. at 1). Accordingly, "[w]ords uttered by a person falsely conveying the charge of a criminal offense involving moral turpitude are insulting and actionable under the [insulting words] statute." Zayre of Va., Inc. v. Gowdy, 207 Va. 47, 50, 147 S.E. 2d 710, 713 (1966); Trail, 697 F. Supp. 2d at 658. See also Shupe v. Rose's Stores, Inc., 213 Va. 374, 376, 192 S.E. 2d 766, 767 (1972) holding modified on other grounds by

---

tend to violence and breach of the peace.'" Sanderson, 19 Va. Cir. at 381 (quoting Cook, 185 Va. at 521). However, two Virginia circuit courts have held that a court may hold the statements at issue "not actionable as a matter of law because of the nature of the words themselves." Id. at 384 (noting agreement with Smith v. Dameron, 12 Va. Cir. 105 (1987)). The Fourth Circuit has held that a court may hold the statements at issue not actionable as a matter of law where the statement was not delivered in a manner that would tend to incite violence and breach of the peace. Id. (noting Dweyer v. Smith, 867 F.2d 184, 196 (4th Cir.1989)). Although the "insulting" part of insulting words is ultimately a jury issue, the court may decide as a matter of law that no reasonable jury could find a set of words insulting.

Fleming v. Moore, 221 Va. 884, 275 S.E. 2d 632 (1981) (implying that all types of defamation per se are insulting).

As described above, Virginia recognizes several types of statements as defamatory per se. This includes statements which impute to the plaintiff the commission of a criminal offense (including aiding and abetting possession of narcotics), which impugn his fitness for his trade (including statements which suggest that plaintiff has engaged in sanctionable professional misconduct), or which prejudice plaintiff in pursuit of his trade. Carwile, 196 Va. at 8; Hatfill, 416 F. 3d at 330-31.

### 2. Federal Pleading Requirements for an Insulting Words Claim

CVS argues that, because Goulmamine failed to quote the exact language of the March 2015 letter, his insulting words claim must be dismissed. (Def.'s Br. 12) (relying on Thompson, 2000 WL 329237, at *4 ("'the exact words charged to have been used by the defendant must be alleged' in order to state a cause of action for insulting words)). Thompson derives this principle from a family of Virginia state court cases holding that "[t]o state correctly a good cause of action for libel, slander or insulting words, the exact words charged to have been used by the defendant must be alleged." E.g., Land Bank of Baltimore v.

35

Birchfield, 173 Va. 200, 200, 3 S.E. 2d 405, 405 (1939); Long v. Old Point Bank of Phoebus, 41 Va. Cir. 409 (1997).

Goulmamine, in response, claims that the "exact words" requirement is a state law requirement that is inapplicable in a federal proceeding, and that laxer federal pleading standards govern his Complaint. (Pl.'s Reply 18) (relying on Hatfill, 416 F. 3d at 329 ("A defamation complaint, like any other civil complaint in federal court, must provide 'a short and plain statement of the claim'")).

Goulmamine's reference to the general federal standard of pleading is defeated by more specific federal jurisprudence on pleading insulting words and defamation under Virginia law. First, Goulmamine ignores that Thompson was a federal district court decision, deciding an insulting words claim, that required plaintiff to plead exact words. Second, courts in the Eastern District of Virginia regularly cite the pleading standards of Virginia state law when they dismiss defamation cases for failure to plead exact words. E.g., McGuire v. IBM Corp., No. 1:11CV528 LMB/TCB, 2011 WL 4007682, at *5 (E.D. Va. Sept. 8, 2011) ("The pleading standard for a defamation claim under Virginia law 'requires that the exact words spoken or written must be set out in the declaration in haec verba'"). Although McGuire and similar cases involve defamation rather than

36

insulting words, the insulting words statute "has been interpreted by Virginia courts to be virtually co-extensive with the common law action for defamation." Potomac Valve & Fitting Inc. v. Crawford Fitting Co., 829 F.2d 1280, 1284 (4th Cir. 1987) (applying constitutional imitations on defamation actions to insulting words cases); O'Neil, 157 F. Supp. at 651 ("an action for insulting words … is treated precisely as an action for slander or libel, for words actionable per se, with one exception, namely, no publication is necessary"). Thompson and McGuire are persuasive authority and, relying on them, the Court concludes that insulting words claims must state the insulting language in haec verba in federal as well as state court.

### 3.   Introduction of CVS's Exhibit 1

CVS operates under the assumption that the letter provided at Exhibit 1 is the same March 2015 letter to which Goulmamine refers in the Complaint as the basis for his insulting words claim. (Def.'s Br. 12). However, Goulmamine

> objects to the unilateral inclusion of its purported March letter to Goulmamine ....
> This letter may indeed be the letter that is referenced in the Complaint, but it also may not. As clearly alleged in the Complaint, Goulmamine was so angry when he received the letter, he ripped it up. Thus, he is unable to say for certain at this stage that CVS is correct in its analysis. In any event, this dispute cannot be resolved at the Rule 12(b)(6) motion to dismiss stage.

37

(Pl.'s Reply 19).

While courts must draw all <u>reasonable</u> factual inferences in a plaintiff's favor at the 12(b)(6) stage, <u>e.g.</u>, <u>Edwards</u>, 178 F. 3d at 244, a court is not required to tolerate <u>unreasonable</u> failures to ask one's client whether an exhibit is the letter referenced in the Complaint. There is no "may or may not": Exhibit 1 either is the letter Goulmamine received in March, or it is not.

### 4.   Application of Law to the Parties' Proffered Letters

Nevertheless, even if Exhibit 1 is not the March 2015 letter underlying Goulmamine's insulting words cause of action, this Court finds that <u>neither</u> Exhibit 1 nor the Complaint states words actionable under the insulting words statute.

### (i)  CVS's Exhibit 1

Exhibit 1 is brief, but the statements are plausibly insulting. The letter suggests that Goulmamine's prescriptions undermined CVS's "compliance obligations." (Def.'s Br. 14; Ex. 1). Drawing all reasonable factual inferences in Goulmamine's favor, this could be read as suggesting a crime of moral turpitude, particularly since <u>Hatfill</u> noted that allegations of aiding and abetting narcotics possession qualified as defamatory <u>per se</u>. <u>Hatfill</u>, 416 F.3d at 331. This may also plausibly be

read as suggesting that Goulmamine has committed professional misconduct. See, e.g., Carwile, 196 Va. at 8. A jury could plausibly find that these statements imply professional misconduct or a crime of moral turpitude, such that they are insulting per se.

However, "insult" is only half of the insulting words statute, and this letter cannot satisfy the other half of the test because it cannot be read as inciting violence or breach of the peace. CVS compellingly points out that its "muted and respectful tone … could never reasonably be construed to provoke violence or a breach of the peace." (Def.'s Br. 14). CVS also points out in its reply that "[p]laintiffs do not deny that the alleged statements did not tend to violence or a breach of the peace, and thus, they must be determined to have conceded the point." (Def.'s Reply 12). Exhibit 1, therefore, cannot form the basis of an insulting words claim, because the letter does not tend to violence or breach of the peace.

### ii. Goulmamine's Complaint

The Complaint states four phrases in haec verba: "wrote too many pain pill," "red flags" and "self pay," and "takes to heart drug abuse and diversion." The statement that Goulmamine "wrote too many pain pill" prescriptions and the suggestion that Goulmamine facilitated drug abuse could be insulting language,

because a jury could find that they imply professional misconduct, which is defamatory and insulting per se.

However, as noted above, insult alone is not sufficient under the insulting word statute: a plaintiff must also plead sufficient facts such that a reasonable juror could find that the words have a "clear and present tendency to incite violence." These four quotations, devoid of any other context, do not suggest that a reasonable juror could find that the words have a clear and present tendency to incite violence.

### 5.    Conclusion

Looking at either CVS's Exhibit 1 or Goulmamine's Complaint, Goulmamine has not pled words adequate that a reasonable juror could find that the March 2015 letter tends to violence or breach of the peace.

Because Goulmamine has failed to state a claim upon which relief may be granted, the Motion to Dismiss Count II will be granted. Count II is dismissed without prejudice, with leave to file an amended complaint within 21 days if Goulmamine can present to this Court the text of an alternate March 2015 letter which tends to incite violence or breach of the peace.

## D. Count III: Tortious Interference

The elements of interference with contract are: (1) the existence of a valid contract; (2) defendant's knowledge of that contract; (3) defendant's intentional interference inducing or causing a breach of that contract; and (4) damages resulting from that contract. (Def.'s Br. 15) (relying on Schaecher v. Bouffault, 772 S.E. 2d 589, 602 (Va. 2015)). Interference with contract is only an available cause of action when contracts are for a set duration, and is not available when the contracts are terminable at will. (Def.'s Br. 16) (relying on Wright v. Dee, 87 Va. Cir. 148, at *3 (2013)).

The elements of a claim for tortious interference with business expectancy are: (1) existence of a business relationship or expectancy with a probability of future economic benefit to plaintiff; (2) defendant's knowledge of the relationship or expectancy; (3) a reasonable certainty that plaintiff would have continued in the relationship or realized the expectancy absent defendant's intentional misconduct; (4) interference by improper methods; and (5) damages resulting from that interference. (Def.'s Br. 17) (relying on BB&T Ins. Servs.,

Inc. v. Thomas Rutherford, Inc., 80 Va. Cir. 174, at *6 (2010); Glass v. Glass, 228 Va. 39, 51, 321 S.E. 2d 69 (1984)).[9]

"Interference with Contract is applied to contracts that are not terminable at will. Interference with Business Expectancy is applied to contracts that are terminable at will, to prospective business relationships or to some type of prospective economic advantage." Wright, 87 Va. Cir. at 151 (relying on Lewis-Gale Med. Ctr., LLC v. Alldredge, 282 Va. 141, 149, 710 S.E. 2d 716, 720 (2011)).

First, although Goulmamine has pled interference through improper acts (defamation) (Compl. ¶¶ 12-15, 23) and has pled damages (lost patients and referrals) (Compl. ¶ 27), Goulmamine has not pled the causation element necessary to both tortious interference causes of action. Even when this lack of causation was challenged, (Def.'s Br. 16, 18), Goulmamine failed to identify any facts connecting the defamation to the loss of business. (Pl.'s Reply 19-20). Goulmamine correctly states that he need not "provide specific examples of patients and

---

[9] Although CVS argues that Goulmamine has failed to plead the "improper act" element of tortious interference with business expectancy (Def.'s Br. 18-19), this Court finds that Goulmamine has pled facts sufficient to support a claim for defamation at the instant stage, supra. Because defamation is an improper method, Storey v. Patient First Corp., 207 F. Supp 2d 431, 447 (E.D. Va. 2002), the Court declines to dismiss on this ground.

referrals" at the 12(b)(6) stage. (Pl. Reply 19). However, he must plead facts that show that CVS's conduct was the cause of the loss alleged in the Complaint. Even accepting all well-pleaded allegations as true, the absence of causation means that Goulmamine's Complaint does not state a set of facts entitling him to relief on either tortious interference cause of action.

Second, Goulmamine has failed to plead the existence of a contract not terminable at will. Although the Complaint states that "Plaintiffs have a valid contract … as to Dr. Goulmamine's and The Spine Center's relationships between them and Dr. Goulmamine's patients," (Compl. ¶ 40), this is merely a conclusory statement, and does not contain facts sufficient to show that these lost patients were not free to terminate their contracts at will. Even accepting all well-pleaded allegations as true, the absence of a terminable contract means that Goulmamine's Complaint does not state a set of facts entitling him to relief the tortious interference with contract cause of action.

For these reasons, Count III will be dismissed with prejudice as regards the Tortious Interference with Contract Claim. Count III will be dismissed without prejudice as regards the Tortious Interference with Business Expectancy claim, with leave to file an amended complaint within 21 days.

43

## CONCLUSION

For the reasons set forth above, Defendant's MOTION TO DISMISS (Docket No. 10) will be denied as to Count I. It will be granted as to Count II, but Count II will be dismissed without prejudice with leave for Plaintiff to file an amended complaint within 21 days if Goulmamine can establish that the torn-up letter is not the same letter that CVS presented at Exhibit 1. That motion will be granted as to Count III. It will be dismissed with prejudice as to the Tortious Interference with Contract Claim. It will be dismissed without prejudice as to the Tortious Interference with Business Expectancy Claim, with leave to file an Amended Complaint stating causation and the nature of the business expectancy within 21 days.

It is so ORDERED.

_____ /s/ _REP_ _____

Robert E. Payne
Senior United States District

Judge

Richmond, Virginia
Date: October _9_, 2015

44